## THE FIRST NATIONAL BANK OF MARBLE FALLS
### v. BORDER ·BROTHERS.
#### No. 1128. '

1. **Statute of Frauds—Assumption of Debt.**—An agreement by the terms of which one party becomes unconditionally liable for the debt of another, who is thereupon discharged, is not within the statute of frauds.

2. **Consideration of Contract—Forbearance to Sue.**—An agreement upon the part of a creditor not to bring a garnishment suit on his debt is, a sufficient consideration to support a contract whereby the intended garnishee binds himself to pay it.

3. **Fraud Against Creditors—Fact Case.**—See the opinion for facts upon which it is held, that the action of a creditor in securing the payment of his own debt was not in fraud of the rights of other creditors of an insolvent debtor.

· APPEAL from the County Court of Burnet. Tried below before Hon. J. A. CREWS.

*J. G. Cook*, for appellant.—1. The court erred in overruling defendant's general demurrer to plaintiffs' first amended petition, and thereby holding that Wade Border, as treasurer of the Marble Falls Ferry Company, could take advantage of his official position as such treasurer to enforce and dictate the payment· of a debt due to a firm of which he was a member, out of money held by him as treasurer, and thus secure an advantage over other creditors of Burns & Dillion. Borden v. Houston, 2 Texas, 606; Conger v. Ring, 11 Barb., 363; Ex Parte Laay, 6 Ves., 625; Bisp. Prin. Eq., 4 ed., p. 133, sec. 92; 2 Pom. Eq. Jur., 3 ed., sec. 1058; Hill on Trustees, 159; Railway v. Elliot, 57 N. H., 397; Railway v. Coleman, 24 Barb. (N. Y.), 300.,

· 2. The agreement between Wade Border,. treasurer, in behalf of Border Bros. and W. O. Richardson, cashier, was made for. the pur-

pose of appropriating to the two creditors the entire funds of Burns & Dillion, and being made with the knowledge of their insolvency and of the existence of other creditors, and with the consent and colluding with Burns & Dillion, was a fraud upon the rights of those creditors, and will not support the verbal promise of said cashier to pay the debt due from Burns & Dillion to plaintiffs.   Martin Clothing Co. v. Page, 1 Texas Civ. App., 537; Johnson v. Heidenheimer, 65 Texas, 263; Claflin v. Sylvester, 12 S. W. Rep., 508.

3.   The plaintiffs in this suit ask the aid of the courts to enforce a contract dictated by themselves that had for its object the appropriation of an insolvent's only assets to themselves and to another creditor, the effect of which was to hinder and delay other creditors.   Cunningham v. Holcomb, 1 Texas Civ. App., 334; Willis & Bro. v. Morris, 63 Texas, 463; 65 Texas, 407.

*Hammond & Ballard,* for appellees.—In order to take an agreement out of the statute of frauds, it is not essential that the original liability should have been extinguished by virtue of the promise to pay it, but whenever the main purpose and object of the promisor is not to answer for another, but to subserve some pecuniary or business purpose of his own, involving either benefit to himself or damage to the other contracting party, his promise is not within the statute of frauds, although it may be in form a promise to pay the debt of another, and although the performance of it may have the effect of extinguishing that liability.   Muller v. Rivien, 59 Texas, 642; Lemon v. Box, 20 Texas, 329; Wallace v. Freeman, 25 Texas Supp., 91; Monroe v. Buchanan, 27 Texas, 248; McCreary v. Vanhook, 39 Texas, 639; 3 Metc., 400; Leonard v. Vredenburg, 8 Johns., 39; Farley v. Cleveland, 4 Cow., 432; Alger v. Scoville, 1 Gray, 91.

KEY, ASSOCIATE JUSTICE.—This is a suit instituted by Border Brothers, a firm composed of Wade Border and J. P. Border, against the First National Bank of Marble Falls, a corporation.   Omitting preliminary averments, appellees' petition reads as follows:

"Third.   That heretofore, to wit, on the 25th day of August, A. D. 1891, and for a long time prior and subsequent to said day and date, one W. O. Richardson was the cashier and accredited agent of defendant bank.

"Fourth.   That on said 25th day of August, A. D. 1891, said Wade Border was the treasurer of the Marble Falls Ferry Company, and as such, had in his custody and under his control the money and funds of said company.

"Fifth.   That on said 25th day of August, A. D. 1891, the said Marble Falls Ferry Company was indebted to Burns & Dillion, a firm composed of David Burns and Ed Dillion, in about the sum of ($2883.04/100) two thousand eight hundred and eighty-three 04/100 dollars.

"Sixth. That the said Burns & Dillion, on the day and date above mentioned, were justly indebted to Border Brothers, plaintiffs herein, in the sum of ($645) six hundred and forty-five dollars.

"Seventh. That on said day and date the said Wade Border had in his hands and under his control, of the money belonging to the said ferry company, a sufficient amount to satisfy, pay off, and discharge all of the indebtedness of said company to the said Burns & Dillion.

"Eighth. That on said last mentioned day and date the said Burns & Dillion were indebted to the defendant, the First National Bank of Marble Falls, in a large sum of money.

"Ninth. That on or about the 25th day of August, A. D. 1891, the Marble Falls Ferry Company had on deposit with the First National Bank of Marble Falls about the sum of $2927.26/100.

"Tenth. That, as the treasurer of the said Marble Falls Ferry Company, it was the duty and the custom of the said Wade Border to draw drafts and checks on the funds of said ferry company deposited in said bank, and to pay off the indebtedness of said company.

"Eleventh. That on, to wit, the 25th day of August, A. D. 1891, the said firm of Burns & Dillion, acting through one of its members, viz., David Burns, called upon Wade Border, as treasurer of the Marble Falls Ferry Company, and demanded of him payment of the indebtedness due by the said ferry company to the said firm of Burns & Dillion; that upon such demand, the said Wade Border presented to the said Burns the account of Border Bros. against the said firm of Burns & Dillion and demanded payment thereof, which was then and there refused by the said Burns; that upon such refusal, the said Border Bros., plaintiffs, determined to garnish the said funds due the said Burns & Dillion, and in order to gain the necessary time in which to procure the papers in garnishment, the said Wade Border refused to pay to the said Burns & Dillion the amount due them by the said ferry company, unless the said Burns & Dillion would allow and deduct from the amount of the indebtedness due by the said Marble Falls Ferry Company to them the amount of their indebtedness to the said Border Bros., to wit, the sum of $645; that the said Wade Border, acting for the firm of Border Bros., then and there informed the said David Burns that he would hold all of the money in his possession belonging to the Marble Falls Ferry Company, and that the firm of Border Bros. would immediately proceed to garnish said company for the debt held by said Border Bros. against the said firm of Burns & Dillion.

"Twelfth. That the said Burns & Dillion, on or about the said 25th day of August, A. D. 1891, was actually insolvent, and had no property or effects known to the plaintiffs in this suit, or either of them, other than the money due them from the said Marble Falls Ferry Company, subject to execution, and the said Burns & Dillion were at said day and date threatened with other garnishment proceedings by other creditors of the said Burns & Dillion.

"Thirteenth. That the defendant bank was at said day and date fully aware of the insolvency of the said Burns & Dillion, and was aware of the fact that the creditors of the said Burns & Dillion were threatening suits against the said Burns & Dillion, and to garnish the funds and money due them by the said Marble Falls Ferry Company; and was fully informed of the fact that plaintiffs were about to garnish the ferry company for the indebtedness due by the said Burns & Dillion to plaintiffs, and was fully informed as to the amount of the indebtedness of Burns & Dillion to plaintiffs. That said defendant bank, fearing that the money and funds of said Marble Falls Ferry Company would be garnished, on account of the indebtedness of said Burns & Dillion, and that the defendant bank would thereby lose its debt against the said Burns & Dillion, on, to wit, the said 25th day of August, A. D. 1891, made and entered into a contract or agreement with plaintiffs, said defendant acting by and through its accredited agent and cashier, W. O. Richardson, as follows: That if plaintiffs would desist from bringing suit against the said Burns & Dillion, and from suing out a writ of garnishment against said Marble Falls Ferry Company, and from garnishing the funds of said company, on account of the indebtedness of Burns & Dillion to plaintiffs, and if said Wade Border, as treasurer of the Marble Falls Ferry Company, would, without let or hindrance, on account of the indebtedness of the plaintiffs against the said Burns & Dillion, pay off and discharge all of the indebtedness of the said ferry company to the said Burns & Dillion, by drawing a check or draft in favor of the said Burns & Dillion on defendant bank, wherein the funds of the said Marble Falls Ferry Company were deposited, the said defendant would credit plaintiffs' account with said defendant bank with the full amount of the indebtedness of the said Burns & Dillion to plaintiffs, to wit, the sum of six hundred and forty-five dollars, Burns & Dillion then and there agreeing thereto.

"Fourteenth. That the consideration moving the defendant bank to enter into said agreement, among other things, was the fact that the said Burns & Dillion, acting by and through David Burns, one of the members of said firm, agreed and bound themselves to immediately turn over to the said defendant bank the money due said firm by the said Marble Falls Ferry Company as aforesaid, and in order to obtain said money and apply the same towards the liquidation of the indebtedness of the said Burns & Dillion to the said defendant bank, before said funds could be garnished by the plaintiffs, and other creditors of the said Burns and Dillon prevailed on the said plaintiffs to desist from their proceeding of garnishment against the said fund, and procured of the said Wade Border a draft or check in favor of said Burns & Dillion for the full amount due by the said Marble Falls Ferry Company to said firm, which said draft or check was immediately by the said Burns & Dillion transferred and delivered to the said defendant bank, and the proceeds arising from the payment of said

check was by the said defendant applied to its own use and benefit, and no part of said check, or the money arising therefrom, was credited to the account of plaintiffs with defendant bank.

"Fifteenth. That on the day and date of said agreement, and fully relying upon the defendant to carry out the terms and provisions thereof, plaintiffs executed and delivered to the firm of Burns & Dillion a receipt in full against the account and debt held by the firm of Border Bros., plaintiffs in this suit, against the said Burns & Dillion, and also entered upon the books of said Border Bros. a credit in favor of said Burns & Dillion for the full amount of their indebtedness to the said Border Bros., and discharged the said Burns & Dillion from further liability to them, the said Border Bros., and looked alone to the defendant, the First National Bank of Marble Falls, to carry out its contract and agreement made as aforesaid by W. O. Richardson, cashier as aforesaid of defendant bank, with plaintiffs, and plaintiffs aver, that by reason of the premises defendant became indebted to plaintiffs and liable to pay to them the said sum of $645.

"Sixteenth. That notwithstanding the agreement and undertaking on the part of defendant as above set forth and fully narrated, and notwithstanding plaintiffs complied with their part of said agreement and desisted from suing out a writ of garnishment, defendant has wholly failed and refused to comply with its said undertaking and agreement, and has failed and refused to credit the account of plaintiffs with defendant with the said sum of $645, or to pay to plaintiffs the said sum of $645, or any part thereof, or in any manner to perform its agreement with plaintiffs, to the damage of plaintiffs in the full sum of $750."

Appellant answered by general demurrer, special exceptions, general denial, and plea that the promise sued on was within the statute of frauds, and without consideration. It also pleaded other matters of defense not necessary to be stated. It is sufficient to say, that the pleadings and evidence raise the questions presented in appellant's brief.

The County Court overruled all the demurrers to appellees' petition, found on the facts substantially as alleged in said petition, and rendered judgment for appellees for the amount sued for.

*Opinion.*—The only assignment of error predicated upon the court's conclusions of fact charges error in the finding that appellees looked alone to appellant for payment of their debt against Burns & Dillion after the promise of appellant to pay the same. It is true that on the 19th of August, 1891, Wade Border, as treasurer of the Marble Falls Ferry Company, drew a check on the bank for $557.73, the amount at that time of Border Bros.' account against Burns & Dillion; but according to his testimony, this check, and another drawn on the 20th of August, 1891, in favor of Otto Ebling, for $2927.26, were on the last named day delivered to the bank, in order that these sums might be

charged to the ferry company on the books of the bank, and thereby make it appear that the ferry company had no money in the bank. This scheme of checking out the ferry company's funds and having them placed to the credit of some one else originated with Richardson, appellant's cashier, and was carried out by Wade Border, they, it would seem from the testimony, supposing that if the books of the bank showed nothing to the credit of the ferry company, the latter would not be subject to garnishment at the instance of the creditors of Burns & Dillion, some of whom Richardson had heard were about to adopt that method for the enforcement of their demands. Wade Border testified, that it was for this purpose that both the checks—one for $557.73, and the other for $2927.26—were delivered by him to Otto Ebling, appellant's assistant cashier. The two amounts were intended to cover the sum which stood to the credit of the ferry company on the bank's books; and Wade Border testified, that both checks were delivered by him to Ebling on the 20th day of August, and upon an understanding, that when the danger of garnishment proceedings was over, the funds would again be credited to the ferry company. Otto Ebling, testifying for appellant, agreed with Wade Border that the check for $2927.26, drawn in favor of Ebling, was drawn and delivered for the purpose stated by Border, but said that the check for $557.73 was presented to the bank on the day previous—the 19th of August—and was on that day charged to the ferry company and placed to the credit of Wade Border, special. Of course, if Border is mistaken in saying that this check was delivered on the 20th of August in furtherance of the scheme intended to ward off garnishment suits, then there is force in the contention that Wade Border, acting for Border Bros., was relying on this check for the payment, pro tanto at least, of his firm's claim against Burns & Dillion. On this issue the two witnesses conflict, and there are collateral circumstances tending to support each. The fact that the check in question is stamped, "Paid August 19, 1891," would be of strong, if not of controlling, force in favor of the correctness of Ebling's evidence, but for the fact that the $2927.26 check drawn on the 20th day of August, 1891, is also stamped, "Paid August 19, 1891." Ebling accounts for this obvious mistake in date by saying, that while in fact he received this check on the 20th and stamped it on that day, he had neglected to change the date in the stamp from what it was on the previous day, and therefore stamped it paid on the 19th. If this be true, then Ebling could have received the $557.73 check on the 20th and stamped it with the same stamp, and it would appear from the stamp to have been delivered on the 19th. We think that the finding complained of is supported by sufficient evidence.

The other questions presented by the assignments of error in appellant's brief relate to the court's ruling on appellant's general demurrer and special exceptions to appellees' petition. We think the ruling was correct. As to the statute of frauds, the petition does not disclose that the promise sued on was verbal, and not in writing. But if

it had done so, it also shows, that by the terms of the agreement appellant became primarily and unconditionally liable, and Burns & Dillion, the original debtors, were discharged. In such a case the statute of frauds does not apply. Warren v. Smith, 24 Texas, 484.

The promise sued on, according to the averments of the petition, was supported by a sufficient consideration. The petition shows that Burns & Dillion were insolvent, and had no property that could be reached by creditors except the money due them from the ferry company; that appellees were about to sue Burns & Dillion and garnish the ferry company; that appellant agreed, that if they would desist and not sue out such garnishment, and if Wade Border, as treasurer of the ferry company, would settle with Burns & Dillion by giving them a check on appellant, it (appellant) would pay the debt Burns & Dillion owed appellees. Undoubtedly appellees had the right to sue Burns & Dillion and garnish the ferry company. According to the petition, they surrendered this right in consideration of the promise sued on. This was a sufficient consideration to support the promise. Bason v. Hughart, 2 Texas, 476; James v. Fulcrod, 5 Texas, 513; Brandenstein v. Ebensberger, 71 Texas, 267. It is also alleged, that in consideration of appellant's promise, appellees released Burns & Dillion. In this another valuable right was surrendered. Besides, but for the agreement pleaded, Wade Border, as treasurer of the ferry company, could have withdrawn from appellant's bank sufficient funds to pay the ferry company's debt to Burns & Dillion and have handed the money to them, and if this had been done, they being insolvent, appellant might have lost its entire debt. But according to the averments of the petition, Wade Border agreed to and did settle with Burns & Dillion by giving them a check on appellant's bank, thereby enabling appellant to collect the greater part of its demand against Burns & Dillion. This was an advantage secured to appellant by the contract, and served as a valid consideration for the promise.

It is also contended that appellees' petition discloses a scheme to defraud other creditors of Burns & Dillion; that the contract sued on contravenes public policy, and is void. It may be, as against Burns & Dillion, that Wade Border, as treasurer of the ferry company, had no right to refuse, when he did, to pay them the amount the ferry company owed them. But if they were insolvent, as the petition alleges, we fail to see how such refusal operated to the prejudice of other creditors. It is to be presumed that the ferry company was solvent, there being nothing to the contrary; and as long as it owed them it was subject to garnishment by any creditor of Burns & Dillion; but as soon as it paid them it placed that much of their assets beyond the reach of their creditors, except as they might choose to apply it. As long as the ferry company withheld payment to Burns & Dillion, creditors had a chance by legal process to reach the amount withheld; and this chance ceased to exist as soon as the ferry company paid Burns & Dillion. It follows, therefore, that Wade Border's refusal to pay Burns & Dillion

until they settled the account of Border Bros. could not have been prejudicial to other creditors. Nor do we perceive wherein the contract sued on could be assailed by other creditors, as in fraud of their rights. Appellant and appellees had the right to collect the debts Burns & Dillion owed them, provided that in so doing they received no more than enough to satisfy their demands, and did not aid Burns & Dillion in obtaining an advantage of their other creditors. The amount received from Burns & Dillion was not sufficient to pay the full amount of appellant's claim, and it was not shown that any benefit, secret or otherwise, resulted to Burns & Dillion.

Our conclusion is, that neither the petition nor the evidence discloses any fraud or violates any rule of public policy. The judgment will be affirmed.

*Affirmed.*

Delivered February 20, 1895.