524

ELLINGTON v. PIRTLE et al.

No. 1850.

Court of Civil Appeals of Texas. Waco.

Feb. 18, 1937.

Rehearing Denied March 18, 1937.

Oxford & McMillan, of Stephenville, for appellant.

Gordon & Williams, of Hamilton, H. J. Cureton, of Meridian, and Allen & Allen, of Hamilton, for appellees.

ALEXANDER, Justice.

J. H. Ellington sued A. I. Pirtle and others to recover on an open account for merchandise sold to him. Plaintiff also sued the Iredell State Bank and its president, T. Mitchell, and alleged in substance that after Pirtle purchased the goods sold to him by the plaintiff, he closed his place of business and was arrested and confined in jail on a criminal charge; that at that time he had in his possession cashier's checks issued by the Farmers' First National Bank of Stephenville · for several thousand dollars and plaintiff was threatening to sue out a writ of garnishment against said Stephenville bank and impound the funds evidenced by said cashier's checks; that said Pirtle was also indebted to the Iredell State Bank in a large sum of money and said bank and its president, T. Mitchell, in order to induce plaintiff not to garnishee the funds evidenced by said cashier's checks, promised and agreed with plaintiff that if plaintiff would not bring suit and garnishee said funds, said Iredell State Bank and its president, T. Mitchell, would procure possession of said cashier's checks from said Pirtle and collect the money due thereon and pay plaintiff's account; that in reliance thereon plaintiff refrained from bringing suit and the defendants, Iredell State Bank and its president, T. Mitchell, secured possession of said cashier's checks and collected the money due thereon and then refused to pay plaintiff's account. The plaintiff sought judgment against said Iredell State Bank and its president. At the conclusion of the evidence, the court instructed a verdict against A. I. Pirtle for the amount of the account sued on, but instructed the jury to return a verdict denying plaintiff a recovery against the Iredell State Bank and its president, T. Mitchell. Judgment was rendered in accordance with said verdict, and the plaintiff appealed.

■ The only material question to be determined is whether or not the evidence offered to prove the alleged agreement between appellant and the Iredell State Bank and its president was sufficient to raise an issue of fact for the jury. Under well-established rules, we must consider the evidence in the light most favorable to appellant. In this connection, appellant testified after Pirtle had closed his place of business and had been placed in jail, he (appellant) went to the bank and discussed the matter of his account against Pirtle with Mr. Mitchell, president of the bank. He further testified: "I told him I came down to see about collecting the (Pirtle) feed account. He seemed kinda surprised and said: 'Haven't you got that money?' * * * He told us not to worry about it; that he would see that we got the money. He (Mitchell) said that Pirtle was in jail in Meridian. * * * Mitchell said that Bert Pirtle would be down there and they were going to Meridian for a settlement

with Pirtle that evening. He said to come back next morning and he would pay us. * . * * I asked him if we would have to sue and he said 'No, just leave that to me—you may lose ten per cent but I think there is enough to pay everybody.' * * * My intention was to try to stop payment on those checks; to file suit on those checks. I knew he had some cashier's checks.

"Q. Well, after your conversation with Mr. Mitchell on that day, did you do anything toward filing any law suit? A. No sir.

"Q. State whether or not you refrained from filing suit? A. Yes sir."

He further testified that when he went back the next morning, Mitchell admitted having had a settlement with Pirtle and having received the cashier's checks from him, but said: "I am sorry boys, I can't pay anything—the bank has a loss of $3,000.00 and I don't feel like bearing any more." W. C. Dunkin, who was present during the conversation between appellant and Mitchell, testified as follows: "Well, John (Ellington) asked about his account—he had an account with the Texas Produce Company (Pirtle)—something over $500.00 —and Mitchell asked if he hadn't got that money yet and he told him he would pay him; that there might be a ten per cent loss for everybody.

"Q. Did Mitchell say anything to Ellington, or did Ellington say anything to him, whether he should or not file a law suit? A. He told us if we kept out of court, he would pay us.

"Q. Did he say when he would pay? A. As soon as he recovered on the checks that he had in shape to get."

Homer Dunkin, who was also present during the same conversation, testified as follows: "Ellington asked about his account and Mr. Mitchell looked surprised and said: 'Haven't you got it yet?' And he said: 'No, I haven't.' He asked him if

they were going to have to go into a law suit and Mitchell said: 'I think there will be enough to pay everybody,' that 'there might be a loss of as much as ten per cent but I don't think it will be over five—come back tomorrow and I'll be able to pay you. Bert Pirtle is coming down and we will get those cashier's checks.'"

While the above evidence does not establish with absolute certainty that the parties intended to make a contract, nor the exact terms of the agreement, if any, yet, when it is considered in the light most favorable to appellant, it is sufficient to authorize the jury to infer from the language used an intention to contract as alleged by appellant. Under these circumstances, it was for the jury to determine what the facts were, what inferences should be drawn from the language used, and to gather the intention of the parties therefrom. 10 Tex.Jur. 332; 13 C.J. 781, § 988; Mayfield Co. v. First National Bank (Tex. Civ.App.) 287 S.W. 510, par. 1; Sines v. Superintendents of Poor for Wayne County, 55 Mich. 383, 21 N.W. 428.

The promise, if any, of the bank to pay the account held by appellant against Pirtle was based on a new and independent consideration and became an original obligation on the part of the bank to pay said account independently of Pirtle's obligation to pay the same, and for that reason the agreement does not come within the statute of frauds (Vernon's Ann.Civ.St. art. 3995). 20 Tex.Jur. 221; 27 C.J. 147; First National Bank v. Border, 9 Tex.Civ.App. 670, 29 S. W. 659.

That part of the judgment of the trial court denying appellant a recovery against the bank and its president, T. Mitchell, under the alleged agreement, is reversed and remanded for a new trial; the judgment of the trial court in all other respects is affirmed.