JOHN C. CRAIG AND E. C. OGDEN V. MARX & KEMPNER.

(Case No. 2068.)

1. GOODS—DELIVERY—ACCEPTANCE—LIEN—NOTICE — COURSE OF BUSINESS—G. contracted with a railway company to furnish it with a certain number of cross-ties, for which, on their being inspected and accepted by the general superintendent, he was to receive 55 cents each, the ties to be inspected monthly and paid for with notes of the company at ninety days, on pay-day following the delivery. Defendants agreed to pay drafts drawn on them by G. to a certain amount, to enable him to fulfill his contract; bills of lading with inspector's certificates were to be attached to the drafts, and the notes of the railroad were to be delivered and paid to defendants. G. executed drafts on defendants in favor of plaintiff, and attached, as collateral security, bills of lading for sufficient ties to cover the drafts. Defendants refused to pay the drafts, and appropriated the proceeds of the ties to the payment of a debt due them from G. *Held:*

(1) That if the ties had been accepted and received by the railroad when the drafts were drawn, the property in them had passed to the road, and G.'s delivery of the bills of lading to plaintiff conferred no right in or lien upon them, nor a superior right to their proceeds;

(2) The right of stoppage *in transitu* does not depend upon title, but on a lien for the price, (following Allen v. Willis, Tyler term, 1885), and that lien ceased with the transit;

(3) A bill of lading evidences, *prima facie*, ownership of goods in transit by the consignee. (Benj. on Sales, sec. 399; Wharton on Cont., sec. 877). The proof may show that the consignor is still the owner. (Authorities reviewed.)

(4) If G. could be considered the owner, at the time the bill of lading was transferred, then plaintiff's ties, and not G.'s, were accepted and received by the railway company, and plaintiff was entitled to the proceeds; he could not recover from defendants, however, unless they had notice of his right. (Wharton on Cont., sec. 733; Foster v. Green, 6 H. and N. 881, etc.)

(5) Defendants' contract with G. fully explained plaintiff's possession of the

bills of lading, and the knowledge of such possession need not have excited in their minds any suspicion that plaintiff was the owner of the ties, or entitled to their proceeds.

2. SAME—COURSE OF BUSINESS—OBLIGATION—See opinion for acts of defendants in paying previous drafts drawn by G. in favor of plaintiff, held not to have established a course of business imposing upon defendants an obligation to accept or pay the drafts involved in this suit.

3. FINDINGS OF THE COURT—When a case is tried by the court, in the absence of findings, if there is any theory of the facts supporting the judgment, it will be assumed that the court below adopted and proceeded upon that theory.

APPEAL from Galveston.   Tried below before the Hon. Wm. H. Stewart.

This suit was brought by John C. Craig, plaintiff below, to recover the amount of two drafts drawn by John B. Goodhue to the order of Craig, upon Marx & Kempner, defendants below.   The plaintiff alleged that John B. Goodhue, on October 19, 1881, being then engaged in fulfilling a contract to furnish railroad ties for the Houston & Texas Central Railroad, executed his drafts—one on Marx & Kempner, requesting them, at sight, to pay to the order of the plaintiff the sum of $1,895.30 ; that attached thereto was a bill of lading for three thousand four hundred and fifty-eight ties, shipped by Goodhue to the railroad, of the value of 55 cents per tie ; that on October 20, 1881, Goodhue drew another draft, in favor of plaintiff, on Marx & Kempner, of like tenor, for $1,330, to which was attached a bill of lading for ties shipped by Goodhue to the railroad, of value more than the amount of the draft; that the drafts were executed and delivered to plaintiff in consideration of the respective amounts thereof advanced by plaintiff to Goodhue therefor, and the bills of lading for the ties then in transit were transferred and delivered to the plaintiff, at the same time, by Goodhue, as collateral security for for the payment of the drafts respectively; that the plaintiff took the drafts in good faith, relying on the security of the bills of lading, and the integrity of Marx & Kempner, who had theretofore paid to him drafts of like character, so drawn by Goodhue ; that in accordance with the usual course of dealing between plaintiff, who was a merchant and banker at Beaumont, Texas, and defendants, who were commission merchants at Galveston, Texas, the plaintiff sent forward the drafts, with bills of lading attached, by mail, to them, which they had requested should be done instead of sending them through other or different channels for collection and payment ; that on October 20 and 21, 1881, the defendants acknowledged the receipt of the drafts and bills of lading attached, respectively, retained the bills of lading, and, on or about October 24, 1881, received the proceeds and

value of the ties, sufficient to cover the amount of the drafts, thereby acknowledging the correctness of the drafts, and impliedly and virtually accepting the same, and thereby became liable to pay the amount of the drafts.

The defendants filed general denial and special answer : That they had a contract with John B. Goodhue, the terms whereof were known to plaintiff; that the defendants therein only obligated themselves to pay the drafts of Goodhue on condition that the bills of lading, with certificates of inspection from the Houston & Texas Central Railroad, accompanied the drafts, not exceeding two-thirds of the contract value so inspected, delivered and accepted; and that Goodhue should buy at least one-third of the value of the contract price in groceries from defendants ; that the drafts were not accompanied by the certificates of the inspector, showing quantity, acceptance and delivery of the ties, and the drafts exceeded two-thirds of the value of the ties, and that Goodhue did not buy goods from defendant to cover one-third of the value of the ties, or otherwise comply with his contract, which was known to plaintiff; that, on receipt of the drafts, defendants again advised plaintiff of the terms of the contract, and that they would not pay them ; that the plaintiff then requested defendants to return the drafts, which was done.

Pending this suit, on September 11, 1884, the plaintiff, John C. Craig, made an assignment for the benefit of all his creditors, including this cause of action, to E. C. Ogden, who obtained leave and filed his intervention, as assignee of plaintiff, to prosecute the same as such. This cause was submitted to the judge, without a jury, for determination on the law and facts, who rendered judgment for the defendants.

A contract made between John B. Goodhue and the Houston & Texas Central Railroad Company, on March 19, 1881, was read in evidence, whereby Goodhue contracted to furnish to the company sixty thousand cross-ties, according to specifications, for which he was to receive for each tie accepted by the general superintendent, or his authorized agent, 55 cents—the ties to be inspected and accepted monthly, and those accepted within any one month, to be paid for with the note of the company, at ninety days, on pay day following the day of delivery.

A contract made on March 28, 1881, between John B. Goodhue and Marx & Kempner, was read in evidence. This contract, referring to the terms of the contract of March 19, 1881, recited that, to enable Goodhue to carry it out, he would require $30,000 in money and supplies, which Marx & Kempner, on terms, agreed to furnish.     Bills of

lading, with inspector's certificates of the railroad company to be attached to drafts drawn on Marx & Kempner for money, not to exceed two-thirds of the contract value of ties; at least one-third of such contract value to consist of goods in the line of Marx & Kempner. It was further agreed that Goodhue should buy of Marx & Kempner, exclusively, all goods in their line which he needed or used in his business, including all matters under the railroad contract, up to March 31, 1882. It was agreed that the notes and moneys, due by the terms of the railroad contract, from it, should be delivered and paid to Marx & Kempner, and that Goodhue should give all orders and instructions, deemed necessary by Marx & Kempner, and endorse the notes, if they requested it, face value of which, at maturity, to be placed to the credit of Goodhue with Marx & Kempner.

It appears that Marx & Kempner applied the proceeds of the ties to the payment of money due them from Goodhue.

*C. L. Cleveland*, for appellants, as to appropriation of the ties for the payment of the drafts, cited: Campbell & Clough *v.* Alford, 57 Tex. 159; 2 Wharton on Cont., sec. 798; Holmes *v.* Bailey, 92 Penn. St. 57; Adoue & Lobit *v.* Seeligson, 54 Tex. 593; Holmes, Lafferty & Co. *v.* German Sec. Bk., 87 Penn. 523.

As to course of dealing establishing a usage, he cited: Bank of Rochester *v.* Joult, 4 N. Y. 497; Burch *v.* Hill, 24 Tex. 156; Bailey *v.* Smalley, 12 Tex. 238; Bank *v.* Homeyer, 45 Mo. 145; 2 Daniel on Nego. Inst., secs. 1640–1644.

*Davis & Sayles*, for appellees, cited: Rule 24, 25 and amended rule 27, supreme court rules; Hodde *v.* Susan, 63 Tex. 307, and recent cases unreported; Gulf, W. & T. Ry. Co. *v.* Moutier, 61 Tex. 123; Green *v.* Dallahan & Co., 54 Tex. 281; Pearson *v.* Flanagan, 52 Tex. 266; Campbell & Clough *v.* Alford, 47 Tex. 161; Texas Land and Cattle Co. *v.* Carroll & Iler, 63 Tex. 48.

ROBERTSON, ASSOCIATE JUSTICE.—It is not clear from the testimony whether the ties shipped by Goodhue to the railroad company were inspected at the place of shipment or upon their arrival at Houston. There is no direct evidence upon the question, and the circumstances incidentally developed on the trial, loosely induce contrary inferences. On the one hand, whilst the contract provides for delivery at the point of shipment, it also stipulates that the ties shall remain at Goodhue's risk until inspected and received, and Kempner testifies that there were frequent discrepancies between the bills

of lading and the certificates of inspection. It was also shown that the certificates of inspection were often delayed. These circumstances feebly indicate that the inspection was to be made at Houston.

On the other hand, the right of the railroad company, under the contract, to receive at a reduced price such ties as did not pass inspection, might explain, consistently with inspection before shipment, the discrepancies between the bills of lading and the inspection certificates; and the provision in the contract between Goodhue and Marx & Kempner, that the drafts of the former upon the latter should be accompanied by both the bills of lading and the certificates of inspection, is absurd as to the bills of lading, unless the inspection preceded the shipment. If the inspection takes place at Houston, the certificate of inspection shows that the ties have been shipped, received and accepted; it thus shows all that the bill of lading could be used to prove, and also that the bill of lading as the representative of property in transit, or any sort of security, is *functus officio.*

In this state of the record, if the court below considered that the inspection preceded the shipment, we cannot determine that the conclusion was wrong. If the fact that the ties were inspected at Houston was material to the plaintiff's case, and the court below held that it was not proven, there is nothing to warrant a reversal of the ruling.

If the ties represented by the bills of lading delivered to Craig with the drafts described in the petition, had already been delivered by Goodhue and accepted and received by the railroad company, in accordance with the terms of the contract between them, the property in the ties had passed to the railroad company, and Goodhue had no interest in them to be transferred to Craig, and his delivery of the bills of lading could confer no lien.

In the bills of lading, the carrier contracted to deliver the ties to the railroad company, and no right or control was reserved in Goodhue. There was nothing to except the case from the operation of the general rule, that delivery to the carrier is delivery to the purchaser. The title had passed; the ownership was in the railroad company, absolutely, subject only to the right of the vendor to stop in transit—a right dependent, not upon title, but on a lien for the price (Allen *v.* Willis, Tyler term, 1885). This lien ceased with the transit, and if, in delivering the bills of lading to Craig, the purpose was to pass to him this lien, the lien had expired before the defendants received the proceeds of the ties.

A bill of lading evidences *prima facie* ownership of the goods in transit by the consignee. The proof may show that the consignor is still the owner. Thus, in the cases cited for the appellant, the owners consigned to factors for sale; in some of the cases the proceeds, by previous agreement, to be applied to the payment of debt due the factors. The shipper continued to be the owner of the goods, and the transfer of the bills of lading, without indorsement, to the payee of the consignor's draft, was an appropriation of the property to the payment of the draft before delivery to the consignee; before the consignee had acquired any right in the property. When the consignee acquired possession, the prior right of the payee of the draft had already attached. Bank *v.* Homeyer, 45 Mo. 145; Holmes *v.* Bailey, 92 Penn. St. 57; Holmes *v.* Bank, 87 Penn. St. 525; Bank *v.* Jones, 4 N. Y. 497; Taylor *v.* Turner, 87 Ill. 296.

In each of these cases, the consignee's only interest in the property was as factor or commission merchant; his business was to sell for account of the consignor; he had no interest whatever in the property until it came into his *actual* possession. If the goods never reached him, he lost nothing. In the case at bar, the ties in transit belonged to the railroad company; it is the very case put by Mr. Benjamin : "Where goods are delivered by the vendor, in pursuance of an order to a common carrier for delivery to the buyer, the delivery to the carrier passes the property, he being the agent of the vendee to receive it, and the delivery to him being equivalent to a delivery to the vendee." Benj. on Sales, sec. 399; to same effect see Wharton on Cont., sec. 877. Craig had no right in or lien upon the ties, and acquired, through the bill of lading, no superior right to the proceeds of the ties. If the intention was to create a lien, Goodhue had no right to encumber the property of the railroad company. If the purpose was to assign to Craig Goodhue's right to the price of the ties, nothing was done to consummate this object. No such purpose was proved, except as the result of what could not be done—the creation of a lien on the ties.

We have discussed the case upon the hypothesis that it was held by the court below that the ties were inspected by the railroad company and received at the places of shipment. The trial was by the court, without a jury, and, in the absence of findings, if there is any theory of the facts supporting the judgment, we must assume that the court below adopted and proceeded upon that theory.

But a different result would not necessarily follow, if the proof was conclusive that the ties were actually accepted and received at Houston, and if they could be considered the property of Goodhue whilst

in transit.   Goodhue being the owner at the time of the transfer of the bills of lading, Craig's ties, and not Goodhue's, were accepted and received by the railroad company on Goodhue's contract; this would give Craig the right to receive the proceeds—the price.  If we then assume that Marx & Kempner knew that the ties belonged to Goodhue at the date of the bills of lading, they could be held to have notice from the drafts accompanied by the bills of lading that Goodhue's title had passed to Craig, if Craig's mere possession of the bills of lading, with the drafts, was not otherwise explained to them.  They had no notice of the parol agreement between Goodhue and Craig that the bills of lading should be held as security for the drafts.  Their contract with Goodhue required, for their protection, that his drafts upon them should be accompanied by the bills of lading.  They did not regard the bills of lading as security, but as evidence of the accrual of a demand upon the railroad company, on the faith of which they undertook to make advancements.  The contract with Goodhue fully explained Craig's possession of the bills of lading, and the knowledge of such possession need not excite in their minds any suspicion that Craig was the owner of the ties, or entitled to the proceeds.  In receiving, in payment of a debt due by Goodhue, the proceeds of these ties, knowing that they are the price of these very ties, they yet may be held under the facts to have no notice of Craig's prior or superior claim to these proceeds.  The railroad company has paid to Marx & Kempner, and they have received, both without notice of Craig's right, money belonging rightfully to Craig, Goodhue receiving the benefit of the misappropriation.  Craig, in such case, has no remedy against Marx & Kempner.  One who receives in payment or security of an antecedent debt, money or negotiable paper, pays value, and cannot be made to restore it to the true owner unless he had notice, at the time he received it, of the real ownership.  Wharton on Cont., sec. 733; Foster v. Green, 7 H. and N. 881; Colland v. Loyd, 6 M. and W., 31 and note; Daniel on Nego. Insts., sec. 780.

In stating Craig's rights as holder of the bills of lading, we have put his case, perhaps, more strongly in his favor than it could be sustained upon authority.  If the proceeds of these ties were yet in the hands of the railroad company, and this was a controversy over them between Marx & Kempner and Craig, it is by no means clear that the prior rights of the former, under their contract with Goodhue, would not be held to be superior to the claims of Craig.  The advancements made and the credit extended to Goodhue, by Marx & Kempner, were, it seems, not severally based upon the dis-

tinct shipments of ties, but they were to collect from the railroad company the proceeds of all the ties and place to the credit of Goodhue. If Craig acquired no interest in the ties themselves through the bills of lading, but merely a lien upon the proceeds, it was subsequent in time to the lien of Marx & Kempner, and it is not clear that it would not be subordinate in right.

Prior to the presentation of the two drafts described in the plaintiff's petition, the appellees had paid two drafts drawn by Goodhue in favor of Craig. One of these they deferred paying, on the ground that no certificate of inspection accompanied it, until the railroad company received the ties and passed the price to the credit of Goodhue. The other they declined to pay until Craig guaranteed indemnity. The payment of these drafts, under these circumstances, cannot be held to have established a course of business imposing upon appellees an obligation to accept or pay the drafts involved in this suit, which were neither accompanied by certificates of inspection, nor by Craig's guaranty against loss.

We find no error in the judgment, and it is, therefore, affirmed.

                                                        AFFIRMED,

[Opinion delivered March 12, 1886.]