MARLIN LUMBER CO. v. SAMUEL HASTINGS CO. et al. (No. 5821.)

(Court of Civil Appeals of Texas. Austin. Oct. 31, 1917. Rehearing Denied Dec. 5, 1917.)

1. EVIDENCE ⊝450(8) — PAROL EVIDENCE — AMBIGUITY IN CONTRACT.

Contract for sale of car of corn, evidenced by letters and telegrams, held ambiguous, leaving it uncertain as to what was meant by the words "delivered" and "inspection allowed."

2. SALES ⊝88 — AMBIGUOUS CONTRACT — QUESTION FOR JURY.

Both parties introducing testimony tending to show the meaning, according to commercial usage, of the words "delivered" and "delivery," in an ambiguous contract for sale of a car of corn, defendant, whose testimony on that subject tended to show that title remained in plaintiff when the corn was injured, and that on account thereof he was not required to accept and pay for the corn, had a right to have the issue submitted to the jury.

3. EVIDENCE ⊝215(3)—ADMISSION—LETTERS.

Defendant may introduce letters written by plaintiff after the making of their ambiguous contract, where they tend to show that plaintiff then construed it as defendant claims it should be construed.

4. CUSTOMS AND USAGES ⊝15(2)—EXPLANATION OF CONTRACT.

A contract for sale of car of corn being ambiguous as to meaning of words "inspection allowed," therein, testimony as to meaning attached thereto among shippers and buyers of carload lots, when used in such a contract, is admissible.

Appeal from District Court, Falls County; Richard I. Munroe, Judge.

Action by Samuel Hastings Company against the Marlin Lumber Company and others. From an adverse judgment the named defendant appeals. Affirmed in part, and in part reversed and remanded for new trial.

Spivey, Bartlett & Carter, of Marlin, for appellant. Davis & Cocke, of Waco, for appellee Samuel Hastings Co. Scott & Ross, of Waco, for appellees St. Louis S. W. Ry. Co. of Texas and St. Louis S. W. Ry. Co.

KEY, C. J. We copy from appellant's brief the following statement of the nature and result of this suit:

"This suit was filed in the district court of Falls county by Samuel Hastings Company against the Marlin Lumber Company and the International & Great Northern Railway Company, plaintiff alleging that it was a corporation engaged in the wholesale grain business at Cairo, Ill., and the Marlin Lumber Company was a corporation engaged in retail lumber and

grain business at Marlin, Tex., and that by telegrams and letters exchanged between plaintiff and defendant Marlin Lumber Company, on the 20th and 21st of November, 1913, plaintiff contracted to sell to defendant Marlin Lumber Company a carload of corn, to be delivered to said defendant at Cairo, Ill.; that on the 22d of November, 1913, plaintiff made delivery of said car of corn by delivering same to the St. Louis Southwestern Railway Company at Cairo, Ill.; that defendant Marlin Lumber Company was indebted to plaintiff in the sum of $581.41, the agreed price for said corn, and asked judgment in said amount, with legal interest from December 1, 1913; and said plaintiff in the alternative asked for judgment against the International & Great Northern Railway Company in the event it should not be entitled to a recovery against the Marlin Lumber Company, alleging that said railway company negligently permitted the value of said carload of corn to be destroyed.

"On the 1st day of December, 1915, the defendant Marlin Lumber Company filed its amended answer and cross-action, pleading general denial; and specially pleading that the contract with plaintiff provided that said carload of corn was to be delivered at Eloise, a station on the line of the International & Great Northern Railway Company, in Falls county, Tex.; that said contract provided for inspection by said defendant before acceptance; that the defendant Marlin Lumber Company inspected said carload of corn at the first practical opportunity, and found the corn in said car rotted and sprouting and unfit for use, said condition being partially due to the corn having been loaded in a car with a leaky roof, permitting rainwater to fall on and soak into said corn, and partially due to flood waters overflowing the tracks of the International & Great Northern Railway Company and soaking into the lower portion of said car of corn; and that the defendant Marlin Lumber Company promptly rejected said car of corn and declined to accept same, and so notified plaintiff. In the alternative, and in the event plaintiff should recover judgment against it, the said defendant Marlin Lumber Company asked judgment over against the defendants International & Great Northern Railway Company, St. Louis Southwestern Railway Company, and the St. Louis Southwestern Railway Company of Texas, alleging the destruction of the value of said carload of corn by reason of negligent acts of said defendant railroads in loading and transporting said corn in a car with a leaky roof, and in permitting said car to be damaged by flood waters.

"The case was tried at the June term of the district court of Falls county, 1916, before a jury. At the conclusion of the evidence the court instructed the jury to return a verdict in favor of the plaintiff against the defendant Marlin Lumber Company, and in favor of the defendants International & Great Northern Railway Company, St. Louis Southwestern Railway Company, and the St. Louis Southwestern Railway Company of Texas, against the defendant Marlin Lumber Company, which was done, and judgment entered in accordance therewith. The defendant Marlin Lumber Company's motion for new trial was overruled on July 27, 1916, to which action of the court said defendant excepted, and gave notice of appeal. * * *

"The negotiations between the plaintiff and this defendant were carried on by means of telegrams and letters. On November 13, 1913, plaintiff wrote Marlin Lumber Company, referring to corn in carload lots, as follows:

" 'The price will never be as low again this season—only 88¢ per bushel of 72 lbs. for choice, heavy ear corn in shuck delivered to points in Texas Group Three, for promp shipment. After the corn has once gone into storage, nothing short of a substantial premium will induce the owner to load it out.

" 'Terms: Arrival draft, inspection allowed, and destination public weigher's sworn weights protected within 2% of invoice. If we were not fully equipped to obtain accurate weights, these terms would be out of the question.

" 'Owing to the scarcity of cars and the prospect of an early advance, we are obliged to request wire acceptance, and shipping instructions to accompany orders. Yours very truly,
'Samuel Hastings Company.'

"On November 20, 1913, this defendant sent plaintiff the following telegram:

" 'Samuel Hastings Co., Cairo, Ill. If snapped corn quoted is dry, sound and heavy, ship one car to Eloise, Texas, your price delivered eighty-eight cents inspection allowed. Wire answer to-morrow.
" 'Marlin Lumber Company.'

"On November 21st plaintiff telegraphed Marlin Lumber Company as follows:

" 'Marlin Lumber Company, Marlin, Texas: Booking car snapped corn Eloise arrival draft our weights govern. Sam'l Hastings Co.'

"On the same date plaintiff wrote this defendant the following letter.

" 'November 21, 1913.

" 'Marlin Lumber Company, Marlin, Texas— Gentlemen: Herewith confirmation covering the sale to you of one car of ear corn in shuck, for shipment to Eloise, Texas, freight prepaid. Terms: Arrival draft, buyer paying exchange, inspection allowed, our weights to govern settlement, you to assume responsibility of pilferage or mishandling at destination. Please note carefully these terms, and be advised that we will not deviate therefrom. * * *
" 'Samuel Hastings Company.'

"The confirmation referred to as being inclosed in said letter is as follows:

" 'Marlin Lumber Company Marlin, Texas: This confirms the sale to you by exchanged wires of to-day as follows: Cars 1 Packages Bulk Size Medium size car, Grade and Kind Good Corn (in shuck), Price 88¢ Freight prepaid Eloise, Texas, Shipment promptly, Route I. & G. N. R. R. Dely. Terms: Strictly net cash; bills payable immediately on arrival of shipment at destination. Inspection allowed. Our weights to govern. * * * If the above is not correct, advise us immediately. Failure to do so will be understood as acceptance of this contract. Yours truly,
" 'Samuel Hastings Company.'

"On November 22, 1913, plaintiff wrote this defendant the following letter:

" 'Marlin Lumber Company, Marlin, Texas— Gentlemen: Herewith invoice covering car of ear corn, in shuck, shipped on your order to Eloise, Texas, freight prepaid. This shipment is moving over the Cotton Belt from Cairo and will be delivered to the I. & G. N. R. R. at Waco. * * * Please have your customer in readiness to receive on arrival at destination, as we will not be responsible after shipment arrives, and draft is payable immediately upon arrival and inspection of the shipment. Yours truly, 'Samuel Hastings Company.'

"On the same date plaintiff wrote the First National Bank of Marlin, Tex., as follows:

" 'Gentlemen: Herewith for collection and remittance, our draft No. 6804, amount $581.41, on Marlin Lumber Company, your city. Present promptly, and if paid on demand, you may deduct exchange from amount collected. If customer requests you to hold for arrival, please add exchange, and remit face value of draft, in funds payable at par here. Where we carry the value of the goods while in transit, and assume all the risks consignee should not object to paying your exchange. Do not release any papers, or allow any deductions, unless specifically authorized by us. If payment

is refused, hold papers and ask us for instructions. Very truly yours,

" 'Samuel Hastings Company.'

"Plaintiff introduced the deposition of W. L. Duncan, its traffic manager, who testified in part as follows: 'Int. No. 6. There is a universal understanding between the shippers of grain and regular receivers thereof that the meaning of the term "delivered" merely signifies that the shipper shall pay the carrier the expense of transportation of the property to the destination designated by the purchaser, and include the amount of the freight charges so paid in the bill against the purchaser, or, where freight charges are not prepaid by the shipper, an allowance to cover the same is made on the bill to purchaser, and a draft is made on the purchaser for the balance of the bill, payable on arrival of the property at destination, unless otherwise agreed. Int. No. 7. The term "delivered," used in the contract for the car of corn between Samuel Hastings Company and the Marlin Lumber Company, meant that Samuel Hastings Company were to prepay the freight charge on the car of corn from Cairo, Ill., to Eloise, Tex., for account of the Marlin Lumber Company, and bill on the Marlin Lumber Company for the value of the corn in full, without freight deduction of any kind. The car of corn was billed by me direct to the Marlin Lumber Company, Eloise, Tex., and draft for the value thereof was mailed to the First National Bank, at Marlin, Tex., with instructions to present and collect from the Marlin Lumber Company the amount of the bill for the car of corn. The Marlin Lumber Company did not pay the draft on arrival of the shipment at destination, nor at any time thereafter, and have not since made any payments thereon to the Samuel Hastings Company.'

"The defendant Marlin Lumber Company introduced the testimony of L. A. Robinson, who testified, in portion as follows: 'I would take it for granted that, when a person bought a car of grain to be delivered at a certain point, the grain would become the property of the shipper until delivered at the point—to the shipper or the carrier; anyway, it would not belong to the purchaser. I do not think the word "delivered" merely signifies that the shipper shall pay the carrier the expense of the transportation of the property to the destination. I am familiar with the use, in shipments of grain in carload lots, of the term "inspection allowed"; that is a term that is frequently used. I would take it to mean that the party who shipped the car of corn with the privilege of inspection, that the purchaser could inspect the car of corn, and after his inspection, if it was suitable, he would pay for the corn, which would become his property. If it would not be what he considered what he bought, he would reject it and it would then remain the property of the seller.' And on this point defendant's witness C. B. Monday testified as follows: 'I said I had been engaged in the grain business for twelve or fourteen years. I have had experience in the shipment of grain in carload lots. I am acquainted with the custom amongst dealers as to the use of the word "delivered" when used in connection with the shipment of a carload of corn from one railroad point to another railroad point. The use of the word "delivered" means delivered at the point where the buyer lives, by the shipper or seller. The use of the word "delivered" does not merely mean that the freight is to be paid by the seller. It means that they are to get the goods there and deliver them there to you, and then when they are delivered you are to pay for them.' And Fred E. Hailey, a defendant's witness, testified as follows: 'I am familiar with the use of the word "delivered" when used in connection with the shipment of grain in carload lots by grain dealers. It means delivered at destination. I can say this: That if that car of corn reached Eloise, was inspected by us, and was sound, dry, and heavy, then we would receive it and pay for it. Otherwise, we would not. The corn, in the condition in which we saw it, could not be handled by us at all.'

"Plaintiff introduced in evidence a portion of this defendant's answer as follows: 'The car of corn in question arrived at the station of Eloise on December 1, 1913. Said overflow came into said car of corn on December 3, 1913, and defendant was not able to reach same or to inspect same until about 15 days thereafter, when said corn had been heated, spoiled, and rotted so as to be unfit for any purpose, and was a total loss.' 'Marlin Lumber Company is a private corporation, * * * having its domicil and place of business at Marlin, Falls county, Tex.'

"Emil Meir, a witness for this defendant, testified as follows: 'My name is Emil Meir. I live at Eloise. I remember the occasion of the overflow in December of 1913. I was in part of it. That overflow was at its height on Thursday at about 1 o'clock or 12 o'clock, something like that. The overflow began coming out on Wednesday. The roads were impassable on Monday. According to Monday, that Thursday would be the fourth of the month, and that Wednesday would be the third. * * * As I have said before, the roads on Monday were muddy and impassable to wagons, and from that time on the conditions got worse. * * * It takes 45 cents to go from Marlin to Eloise. That would be about 15 miles.'

"Albert Tomlinson, a witness for this defendant, testified as follows: 'I recollect the big overflow of December, 1913. I think it occurred about the 2d day of December, on Thursday. I lived right close to the mouth of Deer creek. The mouth of Deer creek is pretty near west of Marlin. I do not know exactly how far that is from Eloise. It had been raining several days prior to that time. * * * On Monday it rained all day long and still raining. * * * Monday night I believe the river came out. Wednesday it was at its highest.'

"R. C. Peacock, a witness for defendant, testified as follows: 'Highbank is about two or three miles from Eloise. * * * I was at Highbank during the overflow of 1913. It was raining all the time for several days before the overflow, until the water got out over the country. The roads were bad. For three or four days before the time that the river came out there was no traveling only by rail. On the 3d day of December it got out the highest. For three or four days before that the creeks were all high and the roads were impassable.'

"C. B. Monday, a witness for defendant, testified that he wrote and mailed to the I. & G. N. agent at Highbank the following letter:

" '1st December, 1913.

" 'Agent, I. & G. N. Ry. Co., Highbank, Texas —Dear Sir: We have en route from Cairo, Ill., shipped to the order of Samuel Hastings Co., notify us, the following: Car P. & L. E. No. 31398, Ear corn, Frt. Paid, Eloise, Texas. Car NYC No. 52766, Ear Corn, Frt. Collect $106.34, Highbank. Please notify us by telephone, our expense, immediately on arrival of each of the above cars. Thanking you in advance for your attention, we are yours very truly, Marlin Lumber Company, Per ——.'

" 'The first information or notice I had about the car of corn was when Agent Heffner at the I. & G. N. office called me up late one afternoon in the latter part of December, and stated that he had a car of corn there with a certain initial and number, and that it had been through the flood, and to come down and take charge of it and empty the car, or words to

that effect. * * * I received notice that that car of corn was there late in the afternoon of the nineteenth of December. * * * I went inside of the car, and the first thing I saw was green sprouts and badly wet corn. * * * We rejected the car.'

"On December 20, 1913, the Marlin Lumber Company sent Samuel Hastings Company the following telegram and letter:

" 'Western Union—Western Union—Day Letter. Form 2589 B. Theo. N. Vail, President. Received at 39CHAM 43 BL Marlin, Texas, Dec. 20-13. Sam. Hastings Co. Cairo, Ill. Car. P. L. E. thirty-one thirty nine eight on track here in Marlin wet and badly damaged after inspecting same are forced reject car. IGN Agent reports car in recent floods and we were not notified of car until yesterday.
" 'Marlin Lumber Co. 1234 P. M.'

"This indorsement is stamped on the face of this exhibit: 'Original delivery made by telephone to Duncan at —— by AY 1242.'

" 'Marlin, Texas, 20th December, 1913.

" 'Sam'l Hastings Co., Cairo, Ill.—Dear Sir: We have just wired you the following day letter and which we now confirm: "Car PLE thirty one thirty nine eight on track here in Marlin; wet and badly damaged; after inspecting same we are forced to reject the car. I. & G. N. reports the car was in recent floods and we were not notified of the car until yesterday.'

" 'We presume that you have noticed reports in the daily press of the extremely high water and consequent flooded conditions of the river bottom lands throughout our state and the resultant damage and loss which has been quite heavy. Regretting the necessity of the above action, we are, yours very truly,
" 'Marlin Lumber Company,
" 'Per C. B. Monday.' "

### Opinion.

[1, 2] We sustain appellant's first and second assignments of error, which complain of the action of the trial court in peremptorily instructing a verdict for appellees.

The contract was evidenced by letters and telegrams, which passed between the plaintiff, Samuel Hastings Company, and the defendant Marlin Lumber Company, who is appellant in this court. Considering all of the instruments referred to, we are of the opinion that the contract was ambiguous, and left it uncertain as to what was meant by the word "delivered" and the expression "inspection allowed." Both sides introduced testimony tending to show the meaning of the words "delivered" and "delivery" according to commercial usage; and therefore appellant had the right to have that issue submitted to the jury, because appellant's testimony upon that subject tended to show the title to the property was in the plaintiff, and not in the appellant, at the time it was damaged, as shown by the testimony, and that on account of such damage appellant was not required to accept the corn and pay for it.

[3] We also sustain the third assignment of error, and hold that appellant had the right to introduce the letters therein referred to and written by the plaintiff, because, although written subsequent to the date of the contract, they tended to show that the plaintiff had at that time construed it as contended for by appellant.

[4] Appellant's fourth assignment is also well taken, and the court should not have excluded the testimony offered by appellant for the purpose of showing the meaning attached to the words "inspection allowed" among shippers and buyers of carload lots of grain, when used in contracts for the sale of grain in carload lots.

Counsel for Samuel Hastings Company have filed a brief pointing out certain facts which tend to show that the shipment of grain belonged to appellant at the time it was injured, but the evidence referred to does not conclusively establish that fact, and therefore that was an issue which appellant had the right to have submitted to a jury. There was no testimony which would have justified the court in submitting to the jury any issue against the St. Louis Southwestern Railway Company and the St. Louis Southwestern Railway Company of Texas, and the judgment in their favor will be affirmed.

As tending to support the conclusions reached by this court, we cite Roberts v. Short, 1 Tex. 373; Gardner v. Watson, 76 Tex. 29, 13 S. W. 39; Berry Bros. v. Fairbanks-Morse & Co., 51 Tex. Civ. App. 558, 112 S. W. 428; Fort Produce Co. v. Dissen, 45 Tex. Civ. App. 403, 101 S. W. 477; Hall & Brown v. W. H. Brown, 82 Tex. 469, 17 S. W. 715; Wootters v. Kauffman, 67 Tex. 492, 3 S. W. 465; Craig & Ogden v. Marx Kempner, 65 Tex. 654.

This disposes of all the questions presented by the appeal, and the result is that the judgment of the trial court in favor of the St. Louis Southwestern Railway Company and the St. Louis Southwestern Railway Company of Texas is affirmed; but as between the other parties, and in all other respects, the judgment is reversed, and the cause remanded for another trial.

Affirmed in part. In part reversed and remanded.