**FIRST NATIONAL BANK OF JEFFERSON, Texas, Appellant,**

v.

**JOSEPH T. RYERSON & SON, INC., Appellee.**

**J. L. BROZO CONSTRUCTION COMPANY et al., Appellants,**

v.

**JOSEPH T. RYERSON & SON, INC., et al., Appellees.**

**Nos. 8104, 8109.**

Court of Civil Appeals of Texas, Texarkana.

Oct. 31, 1972.

Rehearing Denied Nov. 21, 1972 in No. 8104.

---

Bill Cornelius, Cornelius & Cornelius, Jefferson, for First Nat. Bank, appellant.

Alvin Ohm, Mullinax, Wells, Mauzy & Collins, Dallas, Charles A. Allen, Marshall, Earl Sharp, Longview, for Joseph T. Ryerson & Son, Inc., appellee.

T. John Ward, Sharp, Ward & Ross, Longview, for J. L. Brozo Construction Co. and others, appellants.

Bill Cornelius, Cornelius & Cornelius, Jefferson, Charles A. Allen, Marshall, Alvin Ohm, Mullinax, Wells, Mauzy & Collins, Dallas, for Joseph T. Ryerson & Son, Inc., and others, appellees.

CHADICK, Chief Justice.

J. L. Brozo of Lamesa, Texas, operating under the name of J. L. Brozo. Construction Company, by general contract with the Pecos Independent School District, undertook to build a school building and gymnasium at Pecos, Texas, in accordance with architectural plans and specifications. East Texas Fabricated Steel, Inc., entered into a contract with Mr. Brozo to furnish and fabricate all steel required by the building plans. After shopping among steel suppliers, East Texas Fabricated Steel, Inc., located a supplier, Joseph T. Ryerson & Son, Inc., and placed an order with such firm for raw steel of the manufacture and grade specified by the architect. Ryerson declined the order. The fabricating firm communicated its predicament to Mr. Brozo and secured his agreement to cooperate in obtaining the needed steel from Ryerson. As a result of the arrangement, details of which will be noticed later, Ryerson filled the order for steel previously placed by the fabricator and continued furnishing steel until the fabricating operation was discontinued.

While fabrication of the steel was in process, the First National Bank of Jefferson, Texas, filed a suit against East Texas Fabricated Steel, Inc., and caused two writs of attachment to issue. Property of the fabricator, including all raw steel and that in process at the fabricator's plant, was levied upon and the fabricator discontinued operations generally and performed no further under the contract with Mr. Brozo.

When negotiations between the parties failed to produce a settlement, litigation ensued. Ryerson filed suit in the Marion County District Court against J. L. Brozo Construction Company, First National Bank of Jefferson, Texas, and East Texas Fabricated Steel, Inc. The J. L. Brozo Construction Company answered and filed a third party cross-action against East Texas Fabricated Steel, Inc., and the Bank.

East Texas Fabricated Steel, Inc., also answered and filed a third party cross-action against the Bank. The Bank answered. The various theories of recovery and defense plead by the several parties will be noticed only to the extent required in disposing of issues discussed.

When presentation of evidence was completed in the trial court, each party filed a motion for directed verdict. The trial judge granted the several motions in part and entered judgment that:

1. East Texas Fabricated Steel Inc. be dismissed from the action without prejudice to filing, refiling, or urging the same or other and different suits in any state or federal court;

2. Joseph T. Ryerson & Sons, Inc., recover of and from J. L. Brozo and J. L. Brozo Construction Company and the First National Bank of Jefferson, Texas, jointly and severally, the sum of $35,033.30, together with attorney fees, costs, etc.;

3. J. L. Brozo and J. L. Brozo Construction Company recover of and from the First National Bank of Jefferson, Texas, the sum of $35,033.30, together with attorney fees, costs, interest, etc.;

4. Joseph T. Ryerson & Sons, Inc., be subrogated to the claim and interest of J. L. Brozo and J. L. Brozo Construction Company, in the judgment rendered against the First National Bank of Jefferson, Texas, to the end that any sum paid by First National Bank of Jefferson, Texas, to Joseph T. Ryerson & Son, Inc., be credited upon the judgment in favor of Joseph T. Ryerson & Son, Inc., against J. L. Brozo and J. L. Brozo Construction Company;

5. Denied all remedies or relief not specifically granted.

The Bank and Brozo have filed separate appeals from the judgment.

At cessation of operations at the fabricating plant a part of the raw steel had been processed and delivered to the building site at Pecos, Texas. But a substantial amount of raw steel delivered by Ryerson to the fabricating firm's premises was stored in the yard or was in the process of fabrication in the shop when the Bank's attachment precipitated closure. A principal and decisive issue arose in the trial of the case as to whom Ryerson sold the raw steel, and therefore, who owned the steel on hand at the time the Bank's attachment was levied. Did Ryerson sell the steel to J. L. Brozo or to East Texas Fabricated Steel, Inc.? This court has concluded that the evidence does not show a sale to J. L. Brozo as a matter of law; nor is it conclusive that the sale was to East Texas Fabricated Steel, Inc. The evidence raised issues of fact in regard to the true agreement and intent of the parties that should have been submitted to the jury for determination.

East Texas Fabricated Steel, Inc., initially placed an order with Joseph T. Ryerson & Son, Inc., to purchase raw steel of the approximate value of $41,000.00. President Bailey of the fabrication firm testified that when Ryerson declined the firm's initial order, he, Bailey, telephoned J. L. Brozo and told Mr. Brozo that he, Brozo, would have to buy the necessary steel, and that Mr. Brozo agreed to do so. The President of the fabrication firm prepared and sent to Mr. Brozo this letter, viz:

November 18, 1969

"J. L. Brozo Construction Company
P.O. Box 847
Lamesa, Texas

Re: Lamesa Middle School—Additions & Alterations to Gym and Cafeteria at Existing High School—Lamesa.

Dear Mr. Brozo:

We have purchased approximately Forty-one Thousand Dollars ($41,000.-

00) in steel to be used on the above captioned jobs. We have asked that the steel be billed direct to you and a copy of the invoices to be sent to us and the steel delivered to our plant.

This steel order is placed with Ryerson. Ryerson has promised shipment to plant site the week of November 24, 1969.

Please sign one copy and forward to Ryerson—P. O. Box 5960—Dallas, Texas 75222, and return one copy to us.

Thank you for your cooperation.

Sincerely yours,

Richard Bailey
EAST TEXAS FABRICATED
  STEEL, INC.
Richard Bailey—President
RB :pkh

cc—Ryerson

J. L. BROZO CONSTRUCTION COMPANY"

Mr. Brozo in his testimony asserted that he did not at any time place an order for or agree to buy steel from Ryerson. He testified that the arrangement he agreed to in the conversations and communication between the parties was, as the letter of November 18, 1969, stated, to have steel billed to him that was purchased by East Texas Fabricated Steel, Inc. Mr. Brozo amplified the background circumstances by testifying that in order to give several of East Texas Fabricated Steel, Inc.'s subcontractors assurance that they would be paid he had agreed to make them payees in checks he issued to East Texas Fabricated Steel, Inc., in payment of work as it progressed under the contract. He testified that he intended the November 18th letter to confirm an arrangement of similar nature with Ryerson and East Texas Fabricated Steel, Inc., as well as with the Bank.

Mr. Brozo affixed his signature to the November 18th letter and forwarded it to Ryerson. Ryerson's credit manager testified that he considered the letter as Brozo's order for steel, and proceeded to ship the type and quantity of steel first ordered by the East Texas Fabricated Steel, Inc., under an invoice showing it was sold to Brozo Construction, Lamesa, Texas, to be shipped to the fabricators at Jefferson, Texas. The first and all subsequent orders for steel were placed with Ryerson by East Texas Fabricated Steel, Inc. and shipped under similar invoices, copies of which, in all instances, were mailed to Brozo. Brozo at no time for himself or for East Texas Fabricated Steel, Inc., placed an express order for steel with Ryerson.

Just short of a month from the date of the East Texas Fabricated Steel, Inc.'s letter of November 18, 1969, when some but not all steel here in question had been delivered by Ryerson to East Texas Fabricated Steel, Inc., Mr. Brozo wrote this letter, viz :

"December 16, 1969
Re : School Additions
Lamesa, Texas

"Joseph T. Ryerson & Son, Inc.
P.O. Box 3336
Dallas, Texas 75221

Attention : M. L. Carter

Dear Sirs :

I call to your attention the letter of November 18 as prepared by East Texas Fabricated Steel, Inc., a copy of which I signed and forwarded to you.

Please be advised that since the letter referred directly to Lamesa School Projects, I will only be liable for that portion of steel supplied by you that is actually fabricated and shipped to Lamesa. I assume you are of the same understanding.

Sincerely,

/s/ J. L. BROZO
J. L. Brozo
JLB :mb

REGISTERED: RETURN RECEIPT
  REQUESTED"

The record also shows that in response to collection efforts by Ryerson, Mr. Brozo issued three checks to be applied in discharge of his obligation arising out of the

steel purchase transaction. The first, dated December 5, 1969, in the sum of $645.05, payable to Joseph T. Ryerson & Son, Inc., East Texas Fabricated Steel, Inc., and First National Bank of Jefferson. This check was duly endorsed by the payees and credited by Ryerson to Brozo's account. The second, a check for $6,239.82 in favor of the same payees was issued on February 9, 1970, and similarly endorsed and credited. The third check was for $11,646.06, and dated February 9, 1970. It was payable to the same payees and though not endorsed by East Texas Fabricated Steel, Inc. or the Bank, it cleared and was credited by Ryerson to Brozo.

■■■ Both the written and oral evidence of the existence of a sales contract is contradictory and ambiguous and its implications clearly require jury determination. The inferences therefrom support more than one conclusion with respect to sale of the steel and the interpretation to be put upon the agreement of the parties. The arrangement between Brozo, Ryerson, and East Texas Fabricated Steel, Inc., as it was implemented and executed did not conclusively establish a sale of steel by Ryerson to Brozo, or by Ryerson to East Texas Fabricated Steel, Inc. Texas case law defines a *sale* as a transfer, for a consideration, of personal property by a passage of title thereto from the seller to the buyer. 50 T.J.2d Sales, Sec. 1. Of like import is the definition in Tex.Bus. & Commerce Code, Sec. 2.106, V.T.C.A., where it is said: "A 'sale' consists in the passing of title from the seller to the buyer for a price (Section 2.401)*." With respect to contracts generally, a usually reliable authority, 17A C.J.S. Contracts § 611, had summarized the cases and states a rule in this language:

"Whether certain or undisputed facts establish a contract is a question of law for the court, but the existence of such facts and the terms of a contract in fact are, where the evidence is conflicting or admits of more than one inference, questions for the jury or the court as trier of the facts."

The same rule logically must hold true in establishing the terms, intent and meaning when ambiguous of sales contracts. Though the Texas cases vary in detail and some have slight, if any, value as precedents; see Wolfe City Milling Co. v. Ward, 194 S.W. 957 (Tex.Civ.App.1917, no writ); Maddox Motor Co. v. Ford Motor Co., 23 S.W.2d 333 (Tex.Comm'n App.1930); Ellington v. Pirtle, 102 S.W.2d 524 (Tex. Civ.App.1937, error dism'd); Ellerd v. Newcom, 203 S.W. 408 (Tex.Civ.App. Dallas 1918, no writ); American Refining Co. v. Sims Oil Co., 282 S.W. 894 (Tex.Civ. App. Ft. Worth 1926, no writ); Marlin Lbr. Co. v. Samuel Hastings Co., 198 S.W. 1076 (Tex.Civ.App. Austin 1917, no writ); Brazelton Lumber Co. v. Roberts, 253 S.W. 698 (Tex.Civ.App. Ft. Worth 1923, no writ). Also see 50 T.J.2d Sales, Secs. 92, 93, 94 and 51 T.J.2d Sales, Sec. 400, and cases cited in the footnotes thereto. A jury was empaneled to try fact issues herein and from the facts heretofore reviewed, a jury might reasonably conclude that the parties agreed and intended by their writings, conversations, communications and conduct that sale of the steel was by Ryerson to East Texas Fabricated Steel, Inc., with payment therefor underwritten by Brozo.

The statement of facts is in four volumes containing approximately 1200 typewritten pages of testimony, and exhibits numbering in the hundreds. The transcript is correspondingly lengthy. A definitive statement of the pleadings and proof in all aspects is not feasible but evidence underlying the basis of decision has been indicated. The

---

* The Code definition of a "sale" obviously is modified by the provisions of Sec. 2.401. In explaining Sec. 2.401., the comment thereunder states:

"1. This article deals with the issues between seller and buyer in terms of step by step performance or non-performance under the contract for sale and not in terms of whether or not 'title' to goods has passed. * * *." The comment makes it plain that Section 2.401 does not alter the meaning of "sale" as defined in Section 2.106., insofar as passage of title is concerned.

judgment of the trial court dismissing the action of East Texas Fabricated Steel, Inc., is affirmed. In connection with this affirmance, however, the provision of the trial court judgment denying any relief not expressly granted as it applies to East Texas Fabricated Steel, Inc., is reversed and the causes of action plead by Ryerson and Mr. Brozo and J. L. Brozo Construction Company seeking relief and recovery from East Texas Fabricated Steel, Inc., are remanded for new trial; thus East Texas Fabricated Steel, Inc. shall remain a party to the suit as a defendant in such actions. The resolution of fact issues discussed, as well as all such issues raised by pleading and evidence in connection with other actions, alternative actions, and defenses, necessitate a reversal and remand of the judgment, except as initially indicated; it is so ordered.

The original opinion herein dated October 10, 1972, and the disposition of the appeal as therein directed is withdrawn and this opinion and the orders here announced supersede the former opinion and orders. All motions for rehearing are overruled.